1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    LAFONZO R. TURNER,                         No.  2:18-cv-1071 WBS AC

12                  Petitioner,

13          v.                                    FINDINGS AND RECOMMENDATIONS

14    LAURA ELDRIDGE, Warden,

15                  Respondent.

16

17          Petitioner is a California state prisoner proceeding pro se with an application for a writ of

18    habeas corpus pursuant to 28 U.S.C. § 2254.  The action proceeds on the first amended petition,

19    ECF No. 12, which challenges petitioner's 2015 conviction for assault.  Respondent has

20    answered, ECF No. 29, and petitioner has filed a traverse, ECF No. 30.

21                                         BACKGROUND

22       I.    Proceedings In the Trial Court

23          A.  Preliminary Proceedings

24          Petitioner was in the custody of the California Department of Corrections and

25    Rehabilitation when he was criminally charged in Sacramento County superior court with

26    assaulting a correctional office.  He waived counsel and represented himself at trial.

27    ////

28    ////

1

1

      B.  The Evidence Presented at Trial[1]

2

      1.  Prosecution Case

3

The jury heard evidence of the following facts.  On September 14, 2013, petitioner was an

4

inmate at California State Prison, Sacramento.  While visiting with an individual in the visitor's

5

room, petitioner told the correctional officers on duty that he needed to use the restroom.  The

6

inmate restroom was located in the "strip out room," which is a room where prisoners are

7

searched before and after visits.

8

Correctional Officer Stephen Byers told petitioner he would take him to the restroom once

9

he returned from getting a bite to eat.  After Officer Byers left, petitioner asked Correctional

10

Officer Kelley Moore if he could use the restroom.  Officer Moore knew another inmate was

11

using the restroom so she told him he would have to wait.  Petitioner became increasingly

12

agitated and repeatedly used profanity, claiming an urgent need to use the restroom.  Due to

13

petitioner's behavior, Officer Moore terminated his visit.

14

At the time, Officer Byers was in the "strip out room" with another inmate.  Officer

15

Moore opened the door and yelled to Officer Byers that she had terminated petitioner's visit and

16

that she would be escorting him back to the "strip out room" to process him out of the visitor's

17

room.  Officer Moore closed the door and turned to petitioner for his identification card.

18

Petitioner stormed past her, opened the door, and entered the "strip out room" without

19

authorization.  Officer Moore followed.

20

Officer Byers approached petitioner and told him to "strip out."  Petitioner responded,

21

"Fuck that," and swatted Officer Byers's hand away from his arm.  Both officers triggered their

22

personal alarms.

23

Petitioner walked to the toilet and began urinating.  While standing behind petitioner,

24

Officer Byers commanded him to put his hands behind his back.  Petitioner refused.  He again

25

ordered petitioner to put his hands behind his back so he could be cuffed.  Petitioner refused to

26

comply.  To prevent petitioner from turning and urinating on them, Officer Byers put one hand on

27

28

[1] This summary of the evidence is adapted from the opinion of the California Court of Appeals, ECF No. 28-11 at 2-4.

1   petitioner's back and pushed him toward the wall.

2       Petitioner continued to refuse to comply with the officers' commands that he submit to

3   being handcuffed.  Petitioner suddenly spun around and used his left elbow to strike Officer

4   Byers in his right ear, and then punched his left eye, causing a "blow out" orbital wall fracture of

5   his left orbital socket.  Byers also suffered a concussion as a result of the attack.

6       A melee ensued.  Several officers, who had arrived on scene, pulled Officer Byers from

7   the fray.  Petitioner was eventually subdued and restrained.  Petitioner later said it was "personal"

8   between him and Officer Byers.  He also admitted he had been drinking.

9       Video of the altercation showed petitioner throwing the initial blow.

10      2.   Defense Case

11      Petitioner testified on his own behalf, as follows.  His urgent requests to use the restroom

12  were denied even though the urinal was unoccupied.  Petitioner followed Officer Moore's

13  direction to go into the "strip out room" after his visit had been terminated.  Once inside,

14  petitioner told Officer Byers that he needed to urinate.  Rather than allow him to use the restroom,

15  however, Officer Byers told him to "strip out" and to turn around and "cuff up."  He pulled away

16  when Officer Byers tried to grab him and went to the toilet.  Officer Byers aggressively pushed

17  him into the wall, causing him to urinate on himself.  Petitioner testified Officer Byers hit him

18  first and he punched back in self-defense.

19      Tami Turner, petitioner's visitor, testified that he was in a good mood on the day of the

20  incident.  He went to use the restroom during the visit and did not return.  A doctor testified that

21  the medication he prescribed to petitioner can cause difficulty urinating.  The jury heard evidence

22  that petitioner has difficulty balancing due to nerve damage from a gunshot injury, which also

23  impaired his bladder control.

24      C.   Outcome

25      Petitioner was convicted of battery on an unconfined person, and the jury found a great

26  bodily injury enhancement true.  Petitioner admitted a prior strike and two prior prison terms, and

27  was sentenced to an aggregate term of 18 years in prison.

28  ////

3

1      II.      Post-Conviction Proceedings

2          Petitioner timely appealed, and the California Court of Appeal affirmed the judgment of

3   conviction on May 24, 2017.  Lodged Doc. 11 (ECF No. 28-11).[2]

4          Petitioner filed a petition for writ of habeas corpus in the Superior Court of Sacramento

5   County, which was denied in a written decision on August 29, 2018.  Lodged Doc. 12 (ECF No.

6   28-12).  Petitioner next filed a habeas petition in the California Court of Appeal, and respondent

7   was directed to file an informal response.  Lodged Doc. 15 (ECF No. 28-15).  The petition was

8   denied as meritless without discussion or citation on December 21, 2018.  Lodged Doc. 13 (ECF

9   No. 28-13.[3]  Petitioner then filed a habeas petition in the California Supreme Court, which was

10  summarily denied on July 10, 2019.  Lodged Doc. 15 (ECF No. 28-15).

11                STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

12          28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of

13  1996 ("AEDPA"), provides in relevant part as follows:

14              (d) An application for a writ of habeas corpus on behalf of a person
                in custody pursuant to the judgment of a state court shall not be
15              granted with respect to any claim that was adjudicated on the merits
                in State court proceedings unless the adjudication of the claim –
16
                (1) resulted in a decision that was contrary to, or involved an
17              unreasonable application of, clearly established Federal law, as
                determined by the Supreme Court of the United States; or
18
                (2) resulted in a decision that was based on an unreasonable
19              determination of the facts in light of the evidence presented in the
                State court proceeding.
20

21          The statute applies whenever the state court has denied a federal claim on its merits,

22  whether or not the state court explained its reasons.  Harrington v. Richter, 562 U.S. 86, 99

23  (2011).  State court rejection of a federal claim will be presumed to have been on the merits

24  _____

25  [2]  The appellate court directed the trial court to correct the abstract of judgment as to the amount
     of the fee imposed, id. at 6, but it affirmed the judgment of conviction.  The only issue raised on
26  appeal was the trial court's denial of petitioner's motion under Pitchess v. Superior Court, 11
     Cal.3d 531 (1974), for access to Officer Byers' personnel files.
27  [3]  Although the claims for relief were summarily denied, the Court of Appeals noted an error in
     the abstract of judgment regarding the sentence.  Its denial of the petition was therefore without
28  prejudice to petitioner seeking correction of the abstract of judgment in superior court.  Id.

4

1   absent any indication or state-law procedural principles to the contrary.  Id. (citing Harris v. Reed,

2   489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a

3   decision appearing to rest on federal grounds was decided on another basis)).  "The presumption

4   may be overcome when there is reason to think some other explanation for the state court's

5   decision is more likely."  Id. at 99-100.

6          The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal

7   principle or principles" previously articulated by the Supreme Court.  Lockyer v. Andrade, 538

8   U.S. 63, 71-72 (2003).  Only Supreme Court precedent may constitute "clearly established

9   Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

10  issue is clearly established by Supreme Court precedent."  Marshall v. Rodgers, 569 U.S. 58, 64

11  (2013).

12         A state court decision is "contrary to" clearly established federal law if the decision

13  "contradicts the governing law set forth in [the Supreme Court's] cases."  Williams v. Taylor, 529

14  U.S. 362, 405 (2000).  A state court decision "unreasonably applies" federal law "if the state

15  court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to

16  the facts of the particular state prisoner's case."  Id. at 407-08.  It is not enough that the state court

17  was incorrect in the view of the federal habeas court; the state court decision must be objectively

18  unreasonable.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

19         Review under § 2254(d) is limited to the record that was before the state court.  Cullen v.

20  Pinholster, 563 U.S. 170, 180-181 (2011).  The question at this stage is whether the state court

21  reasonably applied clearly established federal law to the facts before it.  Id. at 181-182.  In other

22  words, the focus of the § 2254(d) inquiry is "on what a state court knew and did."  Id. at 182.

23  Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is

24  confined to "the state court's actual reasoning" and "actual analysis."  Frantz v. Hazey, 533 F.3d

25  724, 738 (9th Cir. 2008) (en banc).  A different rule applies where the state court rejects claims

26  summarily, without a reasoned opinion.  In Richter, supra, the Supreme Court held that when a

27  state court denies a claim on the merits but without a reasoned opinion, the federal habeas court

28  must determine what arguments or theories may have supported the state court's decision, and

1    subject those arguments or theories to § 2254(d) scrutiny.  Richter, 563 U.S. at 102.

2                                           DISCUSSION

3    I.        Claim One: Denial of "Pro Per Privileges"

4              A.  Petitioner's Allegations and Pertinent State Court Record

5         Petitioner's first claim for relief is based on CDCR's denial of unmonitored phone calls

6    with his investigator while he was representing himself in superior court.  Petitioner claims that

7    this interference with his "pro per privileges" constituted a denial of due process and of his Sixth

8    Amendment rights.  ECF No. 12 at 5, 26, 75-96 (prison administrative appeals regarding phone

9    and library access).

10        The record reflects that petitioner's motion to waive counsel and represent himself,

11   pursuant to Faretta v. California, 422 U.S. 806 (1975), was granted on November 25, 2014.  1 CT

12   4 (ECF No. 28-1 at 14).  The trial court issued an order regarding state prison inmate pro per

13   status and notice to inmate of pro per privileges.  1 CT 211 (ECF No. 28-1 at 223).  The notice

14   included provisions for access to the prison law library and unmonitored phone calls with any

15   court-appointed investigator.  Id. at ¶¶ 3, 4.  The record of prison grievances establishes that

16   petitioner had to complain to prison officials before the unmonitored calls were allowed.  See

17   ECF No. 12 at 75 (inmate appeal response dated June 17, 2015, granting "request to have staff

18   immediately stop impeding the appellant's due process" in light of the superior court order re pro

19   per privileges).

20             B.  The Clearly Established Federal Law

21        A person brought to trial in any state or federal court must be afforded the right to the

22   assistance of counsel.  Gideon v. Wainwright, 372 U.S. 335, 344 (1963); Faretta, supra, 422 U.S.

23   at 807.  The Sixth Amendment includes the converse guarantee that a criminal defendant has the

24   right to proceed without counsel when he voluntarily and intelligently elects to do so.  See id.

25   Faretta itself "says nothing about any specific legal aid that the State owes a pro se criminal

26   defendant."  Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005).

27             C.  The State Court's Ruling

28        Because the California Supreme Court denied this claim without comment, this court

1    "looks through" the silent denial to the last reasoned state court decision.  See Ylst v.

2    Nunnemaker, 501 U.S. 797 (1991).  Because the superior court issued the only reasoned decision

3    adjudicating the claim, that is the decision reviewed for reasonableness under § 2254(d).  See

4    Bonner v. Carey, 425 F.3d 1145, 1148 n.13 (9th Cir. 2005).

5            The superior court ruled in relevant part as follows:

6                Petitioner first contends that he was prevented from preparing his
             defense when he could not make confidential phone calls. In
7            support of his claim, Petitioner has attached several documents
             pertaining to his administrative appeals. These documents indicate
8            that Petitioner obtained a court order to receive confidential calls
             relating to his case. The prison twice acknowledged the court order
9            and granted Petitioner's request to not impede his due process. In
             the current petition, Petitioner does not provide sufficient details to
10           justify habeas relief. Habeas corpus is an extraordinary remedy that
             may not be invoked where the petitioner has a statutory remedy (In
11           re Clark (1993) 5 Cal. 4th 7 50, 7 64 fn. 3.) or other existing remedy
             that may be pursued. (See generally In re Seeley (1946) 29 Cal.2d
12           294; see also In re McCoy (1948) 32 Cal.2d 73, 76 [habeas corpus
             is available where petitioner has no other adequate remedy].)
13           Petitioner here does not specify, for example, whether prison staff
             to monitored his legal calls after receiving notice of the court order,
14           to which phone calls the prison listened, whether Petitioner brought
             any such action to the attention of the court, or how this ultimately
15           interfered with his ability to present a defense.

16   Lodged Doc. 12 at 2 (ECF NO. 28-12 at 2).

17               D.  Objective Reasonableness Under § 2254(d)

18           The state court's denial of this claim cannot constitute an unreasonable application of U.S.

19   Supreme Court precedent, because the Supreme Court itself has squarely held that Faretta does

20   not clearly establish any right to the "pro se privileges" at issue on this claim.  See Kane, 546 U.S.

21   10 (federal habeas relief unavailable for alleged denial of law library access to pro se defendant,

22   because such right not clearly established within meaning of § 2254(d)).  Neither Faretta nor any

23   other U.S. Supreme Court decision establishes an affirmative right to confidential phone calls

24   with investigators or others.  This fact dooms petitioner's claim in federal court.  See Wright v.

25   Van Patten, 552 U.S. 120, 124-126 (2008) (per curiam) (stating that when the Supreme Court's

26   cases "give no clear answer to the question presented ... it cannot be said that the state court

27   unreasonabl[y] appli[ed] clearly established Federal law").

28           It does not matter whether the California courts or the lower federal courts provide

1   ancillary services to self-represented criminal defendants, or even whether those courts have

2   concluded that such services are constitutionally required.  Absent a governing rule plainly

3   announced by the United States Supreme Court, AEDPA forbids federal habeas courts from

4   interfering with state convictions.  Marshall v. Roberts, 569 U.S. 58, 64 (2013) (no habeas relief

5   based on circuit precedent regarding scope and application of Faretta, where the Supreme Court

6   has not announced the specific rule governing petitioner's claim).

7        Even if petitioner had established prejudice from violation of the superior court's order

8   regarding phone calls (which he has not), he would not be entitled to relief.  Federal habeas

9   jurisdiction does not lie for errors of state law or violations of state court orders, but only for

10  violations of federal constitutional rights.  See 28 U.S.C. § 2254(a); see also Estelle v. McGuire,

11  502 U.S. 62, 67 (1991).

12       For all these reasons, relief is unavailable of Claim One.

13  II.       Claim Two: Shackling During Trial

14            A.  Petitioner's Allegations and Pertinent State Court Record

15       Petitioner alleges in conclusory terms that his due process rights were violated by his

16  appearance before the jury in visible handcuffs, waist chains, and shackles.  ECF No. 12 at 7.

17       The record reflects that a pre-trial hearing related to courtroom security was held on

18  February 23, 2015.  1 RT 77, 83-96 (ECF No. 28-4 at 76, 82-94).  The court heard testimony

19  regarding petitioner's extensive history of assaultive conduct, threats, insubordination, possession

20  of an inmate-manufactured weapon, and other misconduct while in jails and prison.  Id.

21  Petitioner did not object to some degree of restraints being used at trial, but argued that he should

22  not be restrained "to the extent that the jury would view me in restraints by having my hands in

23  restraints while I'm sitting here at the table writing notes or looking through my paperwork."  1

24  RT 97 (ECF No. 28-4 at 95).  He argued that "me being restrained by the waist chain alone,

25  sitting attached to the chair, with two officers behind me, another officer on the side of me, is

26  enough restraints to keep me from trying to flee or escape, and even -- and even attempt to

27  hurting anyone."  Id.

28       The trial court evaluated the evidence, distinguishing between petitioner's "history of non-

1  conforming conduct" and his history of violence and threats.  Id. at 98 (ECF No. 28-4 at 96).  On

2  the basis of the evidence as a whole, the court concluded that there was "a manifest need to secure

3  Mr. Turner."  Id. at 99 (ECF No. 28-4 at 97).  The court ordered that petitioner's writing hand

4  would remain free, but that he would be otherwise fully restrained.  Id.  It was further ordered that

5  a skirt be placed around the defense table to prevent the jury from observing petitioner's waist

6  and ankle chains.  Id. at 124 (ECF No. 28-4 at 122).  Petitioner objected that his restrained left

7  hand would remain visible to jury, and the judge said that "if he kept it down, they may not be

8  actually able to see it."  Id. at 124-125 (ECF No. 28-4 at 122-123).

9          B.  The Clearly Established Federal Law

10         The visible shackling of a criminal defendant during trial can impair the presumption of

11  innocence and the fairness of the trial in violation of due process.  Illinois v. Allen, 397 U.S. 337,

12  344 (1970); Deck v. Missouri, 544 U.S. 622, 630-31 (2005).  Even visible restraints, however, do

13  not violate due process when they are "justified by an essential state interest" such as courtroom

14  security.  Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986).  Prior to ordering that a defendant be

15  shackled during trial, therefore, due process requires a trial court determination that such

16  restraints are necessary with regard to the specific defendant.  Id. at 568.  Where a court without

17  adequate justification orders the defendant to wear shackles that will be seen by the jury, actual

18  prejudice need not be demonstrated to make out a due process violation.  Deck, 544 U.S. at 635.

19  The prejudice from unjustified visible shackling during trial is inherent.  Id. at 634 (quoting

20  Holbrook, 475 U.S. at 568).

21         C.  The State Court's Ruling

22         The superior court ruled in pertinent part as follows:

23             Petitioner also claims he was denied due process when the jury saw
               that he was shackled during trial. A defendant cannot be shackled in
24             the jury's presence unless there is a manifest need for the restraints.
               (People v. Ward (2005) 36 Cal.4th 186, 206.) To justify restraints,
25             there must be some showing of violence or threat of violence.
               (People v. Combs (2004) 34 Cal. 4th 821, 837.) Here, a review of
26             the minute orders indicate that the court found there was a manifest
               need to secure Petitioner but the court allowed his writing hand to
27             remain uncuffed. Petitioner claims that he had no prior misbehavior
               in court, but does not otherwise argue that this decision was
28             improper.

> Additionally, even erroneous courtroom shackling may be harmless where there is no evidence that the shackles impaired or prejudiced the defendant's right to testify or participating in his defense. (People v. Anderson (2001) 25 Cal.4th 543, 596.) Here, the court arranged to place a skirt around counsel table to shield the shackles from the jury's view, so any sighting would have been minimal. In addition, the court instructed the jury under CALCRIM 204 that the fact that physical restraints have been placed on the defendant is not evidence and the jury must completely disregard this circumstance during deliberations. Also, at Petitioner's request, the court instructed the jury that the presence of additional officers in the courtroom was not evidence and should not be considered during deliberations. Petitioner does not make a prima facie showing that the shackling was in error or that it prejudiced him.

Lodged Doc. 12 at 2 (ECF No. 28-1 at 2).

### D.   Objective Reasonableness Under § 2254(d)

When a state court denies a claim for failing to state a prima facie case, the absence of a prima facie case is the determination that must be reviewed for reasonableness under § 2254(d). Nunes v. Mueller, 350 F.3d 1045, 1054-55 (9th Cir. 2003), cert. denied, 543 U.S. 1038 (2004). Here, the dispositive question is whether it was reasonable for the state habeas court to find that petitioner had not presented a prima facie case of unjustified shackling.[4]  The answer is "yes."

Pursuant to clearly established federal law, even visible shackling is constitutionally permissible where there has been a judicial determination that such restraints are necessary with regard to the specific defendant.  Holbrook, 475 U.S. at 568.  The trial court conducted the inquiry required by Holbrook and Deck, supra, and its finding was reasonably based on petitioner's extensive history of acts of violence and threats of violence.  The state habeas court correctly noted that petitioner had identified no procedural or substantive defect in the trial court's determination, and had not presented any evidence that his shackling affected the fairness of the trial or his exercise of his rights.  Under any standard, petitioner's allegations fail to state a prima facie claim of a constitutional violation.  Relief is therefore unavailable.

////

////

---

[4]  Absent shackling that is both visible to the jury and unjustified by courtroom security needs, the Deck presumption of prejudice does not apply.  Deck, 544 U.S. at 635.

10

1    III.    Claim Three: Limitations on Examination of Witnesses

2            A.  Petitioner's Allegations and Pertinent State Court Record

3        Petitioner alleges that his right to present a defense was violated by the trial court's

4    limitations on the manner of witness examination.  Rather than allowing petitioner to briefly

5    cross-examine a prosecution witness and then call or recall the same witness in his case in chief,

6    the trial court "forced petitioner to asked all his question[s] all at once."  ECF No. 12 at 8.

7            B.  The Clearly Established Federal Law

8        The Constitution guarantees to criminal defendants the right to present a defense.

9    Chambers v. Mississippi, 410 U.S. 284 (1973); Crane v. Kentucky, 476 U.S. 683, 690 (1986).

10   State rules limiting the admissibility of defense evidence are constitutionally permissible as long

11   as they are rationally related to the legitimate purpose of excluding evidence that has only a weak

12   logical connection to the central issues at trial.  Holmes v. South Carolina, 547 U.S. 319, 326-330

13   (2006).

14       The Confrontation Clause of the Sixth Amendment guarantees the right to cross-examine

15   prosecution witnesses.  Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam).  However,

16   cross-examination may be limited to accommodate other legitimate interests in the criminal trial

17   process.  Rock v. Arkansas, 483 U.S. 44, 55 (1987).  Accordingly, "trial judges retain wide

18   latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such

19   cross-examinations based on concerns about, among other things, harassment, prejudice,

20   confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

21   relevant."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).

22           C.  The State Court's Ruling

23       The superior court ruled in pertinent part as follows:

24           Petitioner claims that his right to due process was violated when the
             trial court refused to allow Petitioner to recall witnesses in his case-
25           in-chief after they were subject to cross-examination during the
             prosecution's case. "The rights to confront and cross-examine
26           witnesses and to call witnesses in one's own behalf have long been
             recognized as essential to due process." (Chambers v. Miss. (1973)
27           410 U.S. 284, 294.)  Here, Petitioner admits he was presented an
             opportunity to cross-examine the witnesses.
28

1
2
3
4

> "[After] the examinations on both sides are once concluded, the witness cannot be recalled without leave of the court. Leave is granted or withheld, in the exercise of a sound discretion." (People v. Renteria (l960) 181 Cal.App.2d 214, 220, citing Code Civ. Proc., § 2050.) Petitioner has presented no further details or any supporting documentation of his claim. Thus Petitioner has not made a prima facie showing he is entitled to relief.

5  Lodged Doc. 12 at 3 (ECF No. 8-12 at 3).

6              D.   Objective Unreasonableness Under § 2254(d)

7        The state court's finding of no prima facie case is not objectively unreasonable.  See

8  Nunes, 350 F.3d at 1054-55.  Petitioner identified no prosecution witness he was prevented from

9  cross-examining, and no defense theory or specific evidence he was prevented from presenting to

10  the jury.  His complaint about the trial court's ordering of the testimony, which is a matter

11  entirely within the court's discretion, does not implicate any constitutional right.  The U.S.

12  Supreme Court has recognized that the only constitutional limitation on a trial court's discretion

13  to direct the order of evidence involves the testimony of the defendant himself, who may not be

14  required to elect between testifying first for the defense or not at all.  Brooks v. Tennessee, 406

15  U.S. 605, 612-613 (1972).  Without any U.S. Supreme Court precedent holding that trial

16  management procedures like those utilized at petitioner's trial violate a defendant's constitutional

17  rights, AEDPA bars relief.  See Wright, 552 U.S. at 124-126.

18       IV.      Claim Four: Denial of Discovery of Video Evidence

19              A.   Petitioner's Allegations and Pertinent State Court Record

20        Petitioner alleges that his rights were violated by the trial court's repeated denials of his

21  motions for discovery of the prison visiting room video.  ECF No. 12 at 10.  The traverse

22  describes this denial of discovery as a Brady violation.  ECF No. 30 at 9.  Petitioner alleges

23  further that he was entitled to a pin-point jury instruction regarding the absence of this evidence.

24  ECF No. 12 at 10.

25              B.   The Clearly Established Federal Law

26        Federal habeas relief does not lie for errors of state law, including errors related to the

27  admission of evidence and to jury instructions.  See Estelle v. McGuire, 502 U.S. 62, 67 (1991);

28  Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974).  Such matters implicate due process only

1    when they result in a trial that is fundamentally unfair.  Estelle, 502 U.S at 72.

2         In Brady v. Maryland, 373 U.S. 83 (1963), the U.S. Supreme Court held that "the

3    suppression by the prosecution of evidence favorable to an accused upon request violates due

4    process where the evidence is material either to guilt or to punishment, irrespective of the good

5    faith or bad faith of the prosecution."  Id. at 87.  Evidence is material if there is "a reasonable

6    probability that, had the evidence been disclosed to the defense, the result of the . . . proceeding

7    would have been different."  Cone v. Bell, 556 U.S. 449, 469-70 (2009).  In sum, for a Brady

8    claim to succeed, petitioner must show: (1) that the evidence at issue is favorable to the accused,

9    either because it is exculpatory or impeaching; (2) that it was suppressed by the prosecution,

10   either willfully or inadvertently; and (3) that it was material (or, put differently, that prejudice

11   ensued).  Banks v. Dretke, 540 U.S. 668, 691 (2004); Strickler v. Greene, 527 U.S. 263, 281-82

12   (1999).

13              C.  The State Court's Ruling

14        The superior court ruled in pertinent part as follows:

15              Petitioner's claims that the prosecutor failed to fulfill her discovery
              obligations by failing to provide a specific video and the trial court
16            erred in refusing to instruct the jury regarding the failure to turn
              over the video is also unsupported by any documentation. Petitioner
17            cites to Brady v. Maryland (1963) 373 U.S. 83, but a successful
              Brady claim has three components: "The evidence at issue must be
18            favorable to the accused, either because it is exculpatory, or
              because it is impeaching; that evidence must have been suppressed
19            by the State, either willfully or inadvertently; and prejudice must
              have ensued." (Strickler v. Greene (1999) 527 U.S. 263, 281-282;
20            see People v. Lucas (2014) 60 Cal.4th 153, 274.) Here, a review of
              the record shows that Petitioner requested video evidence and an
21            instruction regarding the failure to produce the video. However, he
              has not provided any documentary support for the issue. Petitioner
22            claims it would have shown that he had to restrain himself from
              urinating on himself, but the record suggests this was not an issue.
23            The jury understood Petitioner's need to urinate because the facts
              were that he walked to the toilet and began urinating. (See People v.
24            Turner, No. C078768.) Thus, Petitioner has not shown that the
              video was favorable to him, that he was prejudiced by the failure to
25            disclose it, or that he was entitled to an instruction regarding the
              failure to disclose.
26

27   Lodged Doc. 12 at 3 (ECF No. 28-12 at 3).

28   ////

                                         13

1          D.  Objective Unreasonableness Under § 2254(d)

2          To the extent this claim is based on the trial court's denial of motions for discovery under

3     the California Penal Code, it presents only a state law question that is not cognizable in federal

4     habeas.  See Pulley v. Harris, 465 U.S. 37, 41 (1984).  To the extent petitioner relies on a Brady

5     theory, the state habeas court reasonably rejected the claim.  As that court accurately noted,

6     petitioner failed to identify the video's exculpatory value or its materiality to the verdict.  The

7     video at issue, if it existed, would have shown events in the visiting room; the altercation with

8     Officer Byers happened afterwards in the "strip out room."  Even if the video corroborated

9     petitioner's testimony about his urgent need to urinate (which was not in dispute), it could not

10    have had exculpatory value as to the only factual issue that mattered: whether petitioner had

11    assaulted Officer Byers or had been defending himself from attack.  There *was* video of that

12    interaction, the jury saw it, and it supported the guilty verdict.  Rejection of a Brady-based claim

13    was therefore entirely reasonable.

14         For the same reasons, the state habeas court reasonably rejected the argument that

15    petitioner was entitled to a jury instruction on the failure to disclose the video.  Moreover, the

16    failure to give a jury instruction which might be proper as a matter of state law, without more,

17    does not support federal habeas relief.  Menendez v. Terhune, 422 F.3d 1012, 1029 (9th Cir.

18    2005) (citing Miller v. Stagner, 757 F.2d 988, 993 (9th Cir. 1985)).  Failure to give a requested

19    instruction implicates due process only if it renders the trial fundamentally unfair, in light of the

20    evidence and instructions as a whole.  See Estelle, 502 U.S at 72.  Petitioner has identified no

21    fundamental unfairness in his trial, and no viable defense theory that he was prevented from

22    presenting to the jury.

23         In sum, the decision of the state habeas court involved no unreasonable application of

24    federal law, and relief is therefore barred by AEDPA.

25    V.       Claim Five: Prosecutorial Misconduct

26              A.  Petitioner's Allegations and Pertinent State Court Record

27         Petitioner alleges in conclusory terms that the prosecutor committed misconduct when she

28    (1) objected to his reliance on (unspecified) provisions of Title 15, California's prison regulations,

                                          14

1    and (2) "used false evidence of Byer's testimony of a lawful order when it was not."  ECF No. 12

2    at 12.  The petition does not specify the facts or circumstances of the allegedly improper objection

3    or the allegedly false testimony.

4         The trial record reflects that petitioner cited language from Title 15 while examining

5    Officer Byers, and he used cross-examination to challenge Byers' compliance with applicable use

6    of force and professionalism regulations.  Petitioner was allowed to pursue this course of

7    questioning for a while, but an objection was eventually made and sustained.  RT 290-295 (ECF

8    No. 29-4 at 288-293).[5]

9         The court understands petitioner to allege that the prosecutor committed misconduct by

10   presenting and/or relying on Officer Byer's testimony as to the lawfulness of his own conduct.  It

11   was central to petitioner's theory of defense that Officer Byers was not acting lawfully when he

12   ordered petitioner to strip out and to cuff up.  See, e.g., 2 RT 323 (ECF No. 28-5 at 24) (argument

13   outside the presence of the jury).  The lawfulness of the officer's conduct was an element of the

14   charge against petitioner, about which the jury heard testimony (e.g., 1 RT 220, 284, (ECF No.

15   28-4 at 218, 282), 2 RT 308 (ECF No. 28-5 at 9)) and was instructed (2 CT 355 (ECF No. 28-2 at

16   58)).  Both sides argued the issue in closing.

17                    B.  The Clearly Established Federal Law

18        A prosecutor's improper statements violate the constitution only where they "so infect[]

19   the trial with unfairness as to make the resulting conviction a denial of due process."  Darden v.

20   Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643

21   (1974) (internal quotation marks omitted)).  It is not enough that the remarks were "undesirable or

22   even universally condemned."  Darden, 477 U.S. at 181.  Fundamental fairness must be assessed

23   in context of the trial as a whole, including the weight of the evidence, the defense opportunity to

24   respond, and the instructions given to the jury.  Id. at 181-82.

25   ////

26

27   [5] Petitioner pursued similar lines of questioning with other correctional officers who were
     involved in the incident. See, e.g., 3 RT 761-763 (ECF No. 28-6 at 58-60) (petitioner's
28   questioning of Officer Brian Moltzen, and prosecutor's relevance objection).

1          C.   The State Court's Ruling

2      The superior court ruled in pertinent part as follows:

> 3
> 4
> 5
> 6
> 7
> Petitioner next claims that the prosecution introduced false evidence when she improperly objected to Petitioner's use of a CDCR regulation as an incorrect statement of law. Petitioner claims this is the equivalent of presenting false evidence. However, Petitioner does not provide any supporting documentation regarding this claim, such as the regulation he attempted to use or the transcript of the discussion of the use of the regulation. Thus, Petitioner has not made a prima facie showing he is entitled to judicial relief on this claim.

8   Lodged Doc. 12 at 3-4 (ECF No. 28-12 at 3-4).

9          D.   Objective Unreasonableness Under § 2254(d)

10      It was entirely reasonable for the state habeas court to summarily reject this claim.

11 Petitioner's cursory factual allegations failed to identify any conduct by the prosecutor that is

12 prohibited by the precedents of the U.S. Supreme Court. AEDPA therefore bars relief.

13      Moreover, review of the trial record identifies no improper (let alone unconstitutional)

14 prosecutorial conduct. The prosecutor's evidentiary objections to irrelevant and argumentative

15 questions about Title 15 compliance were well-founded. The lawfulness of Officer Byer's

16 performance of his duties, and of the orders he gave that petitioner disobeyed prior to being

17 placed against the wall to be handcuffed, were questions for the jury. The jury was properly

18 instructed under California law as to lawful performance of official duties. 2 CT 355 (ECF No.

19 28-2 at 58). The prosecutor's argument on this issue did not exceed permissible bounds and

20 cannot reasonably be said to have infected the trial with unfairness. See 3 RT 959-974 (ECF No.

21 28-6 at 256-271) (closing argument).

22      Relief is unavailable.

23    VI.     Claim Six

24      In his sixth ground for relief, plaintiff reprises his allegations that the prosecutor and the

25 trial court committed misconduct and denied him a complete defense by denying discovery of the

26 visiting room camera and limiting the examination of witnesses. The only additional fact alleged

27 here is that the court and/or the prosecutor "dissuaded petitioner's prison witness A. Chandler."

28 ECF No. 12 at 14.

1   For the reasons previously explained in relation to Claims Three and Four, the allegations

2   regarding discovery of video evidence and examination of witnesses cannot provide a basis for

3   habeas relief.  The additional allegation regarding dissuasion of a witness is entirely conclusory.

4   The petition contains no facts indicating what testimony A. Chandle would have provided, or

5   what the prosecutor or trial judge did to dissuade that individual from testifying.  A claim without

6   sufficient supporting facts cannot proceed in state or federal court.  See Hendricks v. Vasquez,

7   908 F.2d 490, 491 (9th Cir. 1990); James v. Borg, 24 F.3d 20, 26 (9th Cir.1994).  The denial of

8   relief on this ground cannot have been objectively unreasonable within the meaning of the

9   AEDPA.

10   VII.   Claim Seven: Ineffectiveness of Appellate Counsel

11   Petitioner alleges that his appellate lawyer was ineffective in failing to raise the issues

12   presented here.  ECF No. 12 at 15.  A criminal defendant enjoys the constitutional right to

13   effective assistance of counsel on appeal.  Evitts v. Lucey, 469 U.S. 387, 391(1985).  The familiar

14   framework of Strickland v. Washington, 466 U.S. 668 (1984), applies to claims of appellate

15   ineffectiveness.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  To demonstrate prejudice,

16   petitioner must show a reasonable probability that he would have prevailed on appeal absent

17   counsel's alleged errors.  Id. at 285-286.  For all the reasons explained above, none of petitioner's

18   claims are meritorious.  Accordingly, a claim of ineffective assistance based on the failure to raise

19   those claims necessarily fails.  The superior court concluded as much in habeas, ECF No. 12 at 4

20   (ECF No. 28-12 at 4), and the higher state courts are deemed to have adopted that decision.  Such

21   a result was required, not objectively unreasonable.

CONCLUSION

23   For all the reasons explained above, the state courts' denial of petitioner's claims was not

24   objectively unreasonable within the meaning of 28 U.S.C. § 2254(d).  Even without reference to

25   AEDPA standards, petitioner has not established any violation of his constitutional rights.

26   Accordingly, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be

27   denied and that the court DECLINE to issue a certificate of appealability under 28 U.S.C. §

28   2253(c)(2).

17

1    These findings and recommendations are submitted to the United States District Judge

2  assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l).  Within twenty-one days

3  after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within fourteen days after service of the objections.  The parties are

7  advised that failure to file objections within the specified time may waive the right to appeal the

8  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED: March 23, 2023

10

11  ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18